UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| TYLER JAMES SCHAEFFER, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No.: 3:16-CV-575-TAV-DCP |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Tyler James Schaeffer has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1],[1] and a supplemental pleading that seeks to add a claim based on *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) [Doc. 19].[2] The government has responded to each [Docs. 7 & 31]. Because, based on the record before the Court, it plainly appears that Schaeffer is not entitled to relief, it is not necessary to hold an evidentiary hearing,[3] and his motion will be denied.

**I. BACKGROUND**

Between July 26, 2010, and September 14, 2012, Schaeffer committed seven Hobbs Act robberies, often assisted by others [Doc. 3, No. 3:13-cr-32]. A federal grand jury

---

[1] All docket citations refer to this civil case unless otherwise indicated.

[2] Schaeffer's motion to amend or supplement will be granted [Doc. 19], and the arguments made in it are considered below.

[3] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

charged Schaeffer with many offenses: committing each of those robberies, in violation of 18 U.S.C. § 1951; conspiring to violate the Hobbs Act, in violation of 18 U.S.C. § 371; four counts of violating 18 U.S.C. § 924(c) for brandishing a firearm during four of those robberies; conspiring to distribute methylone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C); and another § 924(c) violation for possessing a firearm in furtherance of that drug-trafficking crime [*Id.*].

Schaeffer pleaded guilty to all but the firearms counts and maintained that he would dispute "anything related to firearms, . . . and that's what the trial will be on" [Doc. 116, at 18, No. 3:13-cr-32]. Schaeffer admitted that "something was brandished" during the robberies, but disputed whether that "something" was a real firearm, as opposed to a fake one [Doc. 116, at 18, No. 3:13-cr-32]. A jury convicted Schaeffer as charged [Doc. 100, 3:16-CV-575], except for one § 924(c) count that the government dismissed [Docs. 78 & 84, No. 3:13-cr-32].

The Court sentenced Schaeffer to a within-guidelines term of 1,200 months' imprisonment, 960 months of which was statutorily mandated by the four § 924(c) convictions [Doc. 146, No. 3:13-cr-32]. The Sixth Circuit affirmed that judgment on direct appeal, where Schaeffer raised only evidentiary issues. *United States v. Schaeffer*, 626 F. App'x 604 (6th Cir. 2015). This § 2255 motion followed.

## II. ANALYSIS

Here Schaeffer alleges that his Sixth Amendment right to counsel was violated by a recording of his statements to a jailhouse informant, that the prosecution allegedly

2

committed several instances misconduct, that his counsel was constitutionally ineffective, and that his Hobbs Act convictions violate the Tenth Amendment [Doc. 1].[4] Schaeffer's supplemental pleading argues that *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), invalidated the similarly worded residual clause of 18 U.S.C. § 924(c), upon which he claims his convictions depend.[5] However, for the reasons explained below, none of these claims provides any basis for relief.

### A. Procedural Default

As an initial matter, each of Schaeffer's claims—except for those asserting ineffective assistance of counsel or attacking his § 924(c) convictions—are procedurally defaulted. "[A] defendant has procedurally defaulted a claim" if he "fail[s] to raise it on direct review." *Bousley v. United States*, 523 U.S. 614, 622 (1998). These claims, regarding his Sixth Amendment rights, prosecutorial misconduct, and the constitutionality of the Hobbs Act, could all have been objected to and raised on direct appeal and were not. *See United States v. Schaeffer*, 626 F. App'x 604 (6th Cir. 2015) (raising only evidentiary issues). Those claims are therefore procedurally defaulted. For Schaeffer's Tenth Amendment claim asserted in Ground Four of his motion, the analysis ends here because he does not assert any cause that would excuse the procedural default of that claim.

For his other claims to be reviewed, Schaeffer must show, as relevant here, that he had good cause for not raising the claim earlier and would suffer "actual prejudice" if the

---

[4] The government reorganized Schaeffer's claims in this way for the sake of clarity, and the Court will adopt that structure in this opinion.

[5] While this motion was pending, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), which confirmed that the residual clause of 924(c) is indeed void for vagueness.

3

claim were left unreviewed. *United States v. Frady*, 456 U.S. 152, 167–68 (1982). The "hurdle" for overcoming procedural default is "intentionally high . . . , for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Schaeffer asserts that the Sixth Amendment and prosecutorial-misconduct claims were not raised because they "relate to ineffective assistance of counsel claims," which refers to his counsel's failure to "object, preserve for appeal, or appeal" these issues [Doc. 1, at 6].

An ineffective-assistance-of-counsel claim can excuse a procedural default, but counsel's performance "must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). In other words, "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim," must be "itself an independent constitutional claim." *Id.* Thus, to excuse his procedural default, Schaeffer's ineffective-assistance-of-counsel claims must satisfy the familiar and deferential standard from *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "First, the defendant must show that counsel's performance was deficient" as measured by "an objective standard of reasonableness," under which "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 687–89. "Second, the defendant must show that the deficient performance prejudiced the defense," which means that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. For the reasons explained below, Schaeffer's counsel was not constitutionally

4

ineffective with respect to either Schaeffer's Sixth Amendment right-to-counsel claim or his prosecutorial-misconduct claim, so the procedural default of these claims is therefore unexcused.

### 1. *Sixth Amendment right-to-counsel claim*

Schaeffer does not have a claim for ineffective assistance of counsel with respect to the Sixth Amendment right-to-counsel issue, which concerns his statements to a jailhouse informant. While awaiting trial, Schaeffer "confess[ed]" to another inmate about "the robberies that he had been committing before he went to jail" [Doc. 161, at 358, No. 3:13-cr-32]. The other inmate reported those conversations to federal agents, who arranged for that inmate to wear a recording device on December 11, 2012, to capture further conversations with Schaeffer [*Id*. at 349, 358–359]. Schaeffer now alleges that those recorded statements—in which he "clearly and accurately describes most of the robberies that he participated in" [*id*. at 363; *see also id*. at 364–66]—violated his right to counsel.

Even if Schaeffer's Sixth Amendment rights were violated—a matter on which the Court expresses no opinion—there was no ineffective assistance of counsel with respect to this claim because Schaeffer's counsel not objecting on Sixth Amendment grounds did not prejudice Schaeffer. The jailhouse-informant recording apparently only related to Schaeffer's robberies, to which he pleaded guilty, rather than the gun charges, which were the subject of his trial. In fact, Schaeffer's counsel explored this very matter while cross-examining Agent Bukowski, who stated that Schaeffer did not "[say] anything about using [the guns] in anything" during "all of those" conversations involving Schaeffer, which

5

included "[his] interviewing Mr. Schaeffer, some jail calls, and some jailhouse snitches wearing a wire" [*Id.* at 372–73]. Because these jailhouse-informant statements appear to have related only to robberies that were not at issue during Schaeffer's trial, rather than the gun charges he was facing, he was not prejudiced by his counsel's not objecting to any Sixth Amendment right-to-counsel violation. And even if the jailhouse-informant recording were inculpatory, in light of the extensive evidence of Schaeffer's guilt, suppressing that recording—the remedy for this kind of claim, *see United States v. Henry*, 447 U.S. 264, 274 (1980)—would have had no effect on his trial. *See Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))). Because Schaeffer's counsel was therefore not constitutionally ineffective, there is no cause to excuse the procedural default of this underlying Sixth Amendment claim.

### 2. *Prosecutorial-misconduct claims*

There was also no ineffective assistance of counsel with respect to any of the alleged prosecutorial misconduct. Schaeffer claims that the prosecution engaged in seven separate instances of misconduct. According to Schaeffer, the prosecution impermissibly:

(1) advised the jury during voir dire that "you have to be able to focus on [the charges at issue] and understand that maybe there are things at play that because they happened behind the scenes we can't explain everything to you"
(2) vouched for the credibility of Anthony Lashley through the testimony of FBI Agent David Bukowski

6

(3) while cross-examining Schaeffer, expressed numerous opinions about his guilt or credibility and made numerous unfair and improper remarks about the movant

(4) referred to previous convictions, current guilty pleas, or other bad acts, and trying to elicit testimony regarding other bad acts and uncharged crimes

(5) commented on Shaeffer's exercising his right to plead the fifth

(6) introduced Schaeffer's gang affiliation with the Vice Lords to entice jury to convict for the wrong reasons

(7) doubled down on his numerous opinions about the defendant's credibility in his closing arguments to the jury

[Doc. 1, at 5].

When evaluating this type of claim "a court must first consider whether the prosecutor's conduct and remarks were improper." *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (citing *United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir. 1994)). But every improper statement does not warrant relief; rather, "In order to constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (internal quotation marks omitted). Here, none of these purported instances of prosecutorial misconduct was improper at all, let alone so obviously or blatantly such that Schaeffer's counsel violated the constitution by not objecting.

For the first alleged instance of misconduct, the prosecution told prospective jurors during voir dire that they would be expected to "focus" only on the four § 924(c) counts of the indictment, because Schaeffer had already pleaded guilty to other counts of the

indictment. Thus, the prosecution explained that "maybe there are things at play that . . . happened behind the scenes [and could not be] explain[ed]" [Doc. 154, at 37, No. 3:13-cr-32].

A prosecutor's "statements or conduct must be viewed in context" of the entire trial. *See United States v. Young*, 470 U.S. 1, 11 (1985). Under that lens, this statement was not a reference evidence outside the record, or an implication that unavailable information would have corroborated a witness's testimony or otherwise proved petitioner's guilt., both of which were held impermissible in *Washington v. Hofbauer*, 228 F.3d 689, 701 (6th Cir. 2000). Rather, the prosecutor's statement was an accurate explanation of the unusual posture of Schaeffer's case, where he pleaded guilty to some, but not all, of the indictment, and a reminder that, despite potential gaps in the evidence, the jury should focus only on the charges being tried rather than other things left unexplained. Because this statement was permissible, Schaefer's counsel was not ineffective for failing to object to it.

The second instance of alleged misconduct concerns the prosecutor's use of FBI Agent David Bukowski to "vouch[] for the credibility of Anthony Lashley." The cited portion of the transcript is Agent Bukowski's redirect examination, when Agent Bukowski stated that, aside from Lashley's initial minimization of his offense conduct, Agent Bukowski was unaware of any subsequent instance when Lashley was "untruthful" with him [Doc. 161, at 395, No. 3:13-cr-32].

Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating his personal belief or referring to evidence outside the record. *See United*

*States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004). "Prosecutorial vouching rarely warrants a new trial" in any event, *Smith v. Jones*, 326 F. App'x 324, 328 (6th Cir. 2009), but nothing of the sort happened here. First of all, the supposedly infirm statement came from Agent Bukowski, who was a witness, not the prosecutor. It is therefore unclear (to say the least) whether that statement represents the prosecutor's personal belief about Lashley's credibility. But, more to the point, Agent Bukowski did not speculate about whether Lashley had testified credibly at trial, but rather merely recounted his own interactions with Lashley during his investigation. Agent Bukowski was specifically asked on cross whether Lashley had admitted the full extent of his criminal activity when first interviewed [Doc. 161, at 388–92, No. 3:13-cr-32]. Lashley himself was also cross-examined on that very point, and he stated that he "didn't give the whole truth" when he first spoke with Agent Bukowski [*Id.* at 90]. In this context, then, it was therefore appropriate redirect for the prosecutor to ask Agent Bukowski whether he knew of any other dishonesty on the part of Lashley, and it appears that he did not. Because this exchange was not improper, Schaefer's counsel was not ineffective for failing to object to it.

The third, fourth, fifth, and seventh instances of purported misconduct concern various statements by a prosecutor, who allegedly: expressed his personal opinions about Schaeffer's guilt and credibility while cross-examining him and in closing argument, "tried to elicit testimony regarding other bad acts and uncharged crimes," and improperly commented on petitioner's "right to plead the fifth" [Doc. 1, at 5–6]. Courts are to

9

"consider the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "[P]rosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence," but "they cannot offer their opinions as to credibility of a witness [or] guilt of a defendant." *See Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

Here, a prosecutor called Schaeffer a liar multiple times while cross-examining him [Doc. 163, at e.g., 48, 97, No. 3:13-cr-32]. The Sixth Circuit has held that a prosecutor's calling several witnesses—including the defendant himself—liars was not improper, because "[s]ignificant evidence offered at trial supported the prosecutor's statements." *Cristini*, 526 F.3d at 902. The Sixth Circuit in *Cristini* observed that the "prosecution's argument was coupled with a detailed analysis of the record," specifically, "[e]ach time the prosecutor said some witness had lied, he explained why the jury should come to that conclusion." *Id.* That was the case here: petitioner's testimony was contradicted by a lot of evidence at trial, so either petitioner—or, alternatively, all of the government's witnesses—were lying. Exploring this on cross-examination was not improper, so Schaeffer's counsel was therefore not ineffective for not objecting.

Schaeffer also takes issue with the following quip by the prosecutor: "You know what the best evidence in this case is, Tyler Schaeffer? . . . The opposite of whatever comes out of your mouth" [*Id.* at 119]. But this statement was objected to, so Schaeffer's counsel could not have been ineffective for failing to do so. Moreover, the jury was instructed on

10

its duty to obey the Court's "order[s] . . . to disregard things you saw or heard" as a result of sustained objections [Doc. 196, No. 3:13-cr-32]. The jury is presumed to follow the instructions it receives, *United States v. Cunningham*, 679 F.3d 355, 383 (6th Cir. 2012), and there is no basis in the record to think that the jury did anything different here. So even if this statement were improper, it was nonprejudicial. There was therefore no ineffective assistance of counsel.

Schaeffer also complains of a single, isolated reference to him as a "liar" during closing argument [*Id.* at 206]. But courts are to "afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). This statement was therefore not improper for the same reasons as the prosecutor's calling Schaeffer a liar during cross-examination, so there was no ineffective assistance of counsel in this respect.

The prosecutor also arguably attacked Schaeffer's character when he referred to the "cowardly way that you came up and sucker-punched Phillip Matthew Green" [*Id.* at 113], and followed up by asking whether "it's cowardly to go stick guns in the faces of girls and women" [*Id.*] Schaeffer replied, "Oh, yes, sir, that—that is wrong. Yes, sir, it's very wrong" [*Id.*]. But these comments were too few and too separate from the charged crimes to constitute prosecutorial misconduct. As the Sixth Circuit has explained, "[w]hen a prosecutor dwells on a defendant's bad character to prove that he or she committed the crime charged, we may find prosecutorial misconduct." *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008). Here, the prosecutor did not dwell on Schaeffer's cowardice, a

11

character trait which relates to the crimes at issue—firearm possession—only tangentially. Passing reference to Schaeffer's purported cowardice, while perhaps not commendable, does not rise to the level of prosecutorial misconduct. Schaeffer's counsel was therefore not ineffective for failing to object to this exchange.

Several other remarks that might otherwise be improper were permissible in the context of Schaeffer's trial, where his entire defense was that he was an honest man who had "admit[ted] what [he had] done," [Doc. 163, at 69, No. 3:13-cr-32], but who had only ever used "fake gun[s]" in his robberies [*Id.* at e.g., 79, 80, 89, 102]. This defense, combined with Schaeffer's taking the stand, opened the door for a searching inquiry into his truthfulness and criminal history.

At one point, Schaeffer alleges that, after he had pleaded the fifth on the advice of counsel, the prosecution improperly asked, "So that's not true; is it? You don't admit everything you've done?" [*Id.* at 69, 71], and when discussing another prior conviction, asked "so you're not taking the Fifth about this one, right?" In general, prosecutors should not comment on a defendant's exercise of his Fifth Amendment rights. *See, e.g.*, *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007). The concern in *Girts* and cases like it is that the jury will infer from the defendant's silence that he committed the charged crime. Here, however, the prosecutor was permissibly attempting to challenge the credibility of Schaeffer's honest-man defense. Schaeffer's pleading the fifth with respect to past crimes did not make it more likely that he possessed firearms during the robberies he pleaded to (the issue at trial), but rather undercut the central premise of his defense—his truthfulness

12

and credibility—and it was appropriate for the prosecutor to explore that during cross-examination. Schaeffer's counsel was therefore not ineffective for letting that happen.

Schaeffer also claims, citing a large swath of the trial transcript [Doc. 163, at 69–94, No. 3:13-cr-32], that the prosecution inappropriately discussed his previous convictions, current guilty pleas, and other bad acts. But after reviewing this portion of the transcript, the prosecution used this evidence for a permissible purpose, that is, use "other than as character or propensity evidence." *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007); *see also* Fed. R. Evid. 404. Schaeffer's entire defense—that he was believable because he had admitted all of his prior crimes—opened the door and put his criminal history, credibility, and truthfulness squarely at issue. The prosecutor therefore permissibly cross-examined Schaeffer about whether he had, in fact, admitted all of his criminal history, an inquiry which directly bore on his truthfulness and credibility, rather than his guilt or innocence (i.e., whether or not he used or possessed a real, as opposed to fake, firearm). Schaeffer's counsel was therefore not ineffective in this regard.

The sixth and final instance of alleged misconduct accuses a prosecutor of introducing Schaeffer's affiliation with the Vice Lords gang for the "wrnog [sic] reasons" [Doc. 1, at 5–6]. But the cited portions of the transcript do not reveal any improper motivation; in fact, in context the complained-of references to the Vice Lords were benign and most likely intended to refresh Schaeffer's recollection. Schaeffer could not remember whether his accomplice in one robbery had been co-defendant Jerel Johnson, or another individual named Jay White [Doc. 163, at 94, No. 3:13-cr-32]. The prosecutor then asked

13

Schaeffer whether White was a "Vice Lord brother," which Schaeffer had previously told the FBI; he said that he did not recall [*Id.* at 94–95]. Then the prosecutor reminded Schaeffer, "You told the FBI you met Jay White in prison in West Tennessee and that's when you became a Vice Lord?" to which Schaeffer answered, "Yes, sir. Another one of my mistakes" [*Id.* at 95]. When asked if "that continued" until September 2012, when Schaeffer wrecked his car and "Vice Lord literature" was found in it, petitioner agreed [*Id.*]. Where, as here, "gang references were neither extensive nor deliberate, and they did not create a sustained pattern of misconduct," *Bond v. McQuiggan*, 506 F. App'x 493, 497 (6th Cir. 2012), there is no prosecutorial misconduct. Schaefer's counsel was therefore not ineffective for failing to object during this exchange.

To the extent Schaeffer also claims ineffective assistance of appellate (rather than trial) counsel with respect to these claims, that argument likewise fails. "Declining to raise a claim on appeal . . . is not deficient performance unless [the unraised] claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Schaeffer has not attempted to make this showing. In any event, for the reasons explained above, none of these procedurally defaulted claims was plainly stronger than those raised by Schaeffer's counsel on direct appeal, particularly given that the nearly all of the defaulted claims were not preserved and thus would have been reviewed only for plain-error.

Schaeffer's counsel was not ineffective for failing to object to any of these alleged instances of prosecutorial misconduct. Accordingly, there is no cause to excuse the procedural default of any of the underlying prosecutorial-misconduct claims.

B.  **Standalone ineffective-assistance-of-counsel claim**

Schaeffer also asserts three claims for ineffective assistance of counsel, two of which have already been rejected during the preceding cause-and-prejudice analysis. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that ineffective-assistance-of-counsel must violate the Constitution to excuse procedural default). For the same reasons just explained, the purported failure of Schaeffer's counsel to "object, preserve for appeal, or appeal" any Sixth Amendment right-to-counsel claim or prosecutorial-misconduct claim was not constitutionally ineffective. *Supra* at 3–15.

In addition to those already-rejected claims, Schaeffer claims that his counsel was ineffective for "[f]ailing to request the removal of Juror 248[,] whose nephew works for the Knox County Sheriff's Department at the County Jail" [Doc. 1, at 5]. Schaeffer maintains that "he was prejudiced in light of all the negative publicity from the movant's high[-]profile state trial that likely permeated and prejudiced the jury as a result" [*Id.*].

Schaeffer's counsel was not ineffective in this regard. The Court specifically asked Juror 248, along with all the other potential jurors who had "family members or friends who ha[d] been employed by law enforcement"—whether that fact would "interfere or impede in any way with [their] ability to function as a fair and impartial juror in this case." Nobody, Juror 248 included, responded affirmatively [Doc. 154, at 23–24, No. 3:13-cr-

32]. There was therefore no reason for Shaeffer's counsel to think that Juror 248 was biased against Schaeffer, nor was there any prejudice from counsel's lack of objection due to the Court's questioning.[6] Schaeffer has therefore not established that his counsel rendered constitutionally ineffective assistance by not moving to strike Juror 248, so he has no claim on that basis.

### C. Section 924(c) convictions

Despite his argument to the contrary, Schaeffer's four convictions under 18 U.S.C. § 924(c)—for counts 6, 10, 12, and 14 of the indictment—all survive the Supreme Court's recent decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Davis*, 139 S. Ct. 2319 (2019). The latter case held unconstitutionally vague the so-called residual clause of § 924(c), which punished using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," a crime that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Davis*, 139 S. Ct. at 2324. Schaeffer now asserts that his convictions are invalid. But even assuming this amendment or supplemental motion is timely, the claim fails on its merits, so relief is not warranted.

Schaeffer's convictions on counts 6, 10, and 12 must still stand because the underlying crime of violence, Hobbs Act robbery, also qualifies as a "crime of violence" under § 924(c)'s use-of-force clause, which covers crimes that have "as an element the use,

---

[6] To the extent petitioner means to fault his counsel for not exercising a peremptory strike against Juror 248, the exercise of peremptory challenges is a matter of trial strategy and is thus "effectively insulated" from ineffectiveness review. *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001).

16

attempted use, or threatened use of physical force against the person or property of another." The Sixth Circuit has explicitly held that Hobbs Act robbery fits that bill:

> A conviction under § 1951(b)(1) [i.e., Hobbs Act robbery] requires a finding of "actual or threatened force, or violence, or fear of injury, immediate or future." Section 1951(b)(1) clearly "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" as necessary to constitute a crime of violence under § 924(c)(3)(A).

*United States v. Gooch*, 850 F.3d 285, 291–92 (6th Cir. 2017). Counts 6, 10, and 12 each charged Schaeffer with using, carrying, and brandishing a firearm during and in relation to three of the Hobbs Act robberies (to which he pleaded guilty) [Doc. 1, No. 3:13-cr-32]. Thus, in light of *Gooch*, Schaeffer's convictions on these counts involved a crime of violence even without the residual clause of § 924(c), so these convictions must stand.

Unlike the other § 924(c) counts, count 14 was for possession of a firearm in furtherance of a drug trafficking crime, rather than a crime of violence, and therefore could not possibly have been affected by *Dimaya* and *Davis*, both of which pertain only to violent crimes. Schaeffer argues for the first time in his reply brief that, because the underlying offense for count 14 "charged conspiracy as a predicate crime of violence," it "clearly depends on the residual clause" [Doc. 32, at 7]. Schaeffer forfeited this argument, *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (arguments raised for the first time in a reply brief are forfeited because the opposing party "ordinarily has no right to respond to the reply"), but in any event it is incorrect. Count 14 charged Schaeffer under § 924(c) with possessing a firearm during a "drug trafficking crime" [Doc. 1, No. 3:13-cr-32]. Section 924 defines "drug trafficking crime" as "any felony punishable under the

17

Controlled Substances Act [21 U.S.C. §§ 801 et seq.]," which the drug-trafficking conspiracy to which Schaeffer pleaded guilty, violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), certainly is. This conviction had nothing to do with a "crime of violence." *Dimaya* and *Davis* are therefore completely irrelevant to this conviction, which therefore must stand.

### III. CONCLUSION

For the reasons explained above, Schaeffer is not entitled to relief under 28 U.S.C. § 2255, and his motion to vacate, set aside or correct sentence [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**. Schaeffer's motion to amend or supplement is **GRANTED** but likewise does not warrant relief [Doc. 19], and his motion for a discretionary fee exemption is **DENIED** as moot [Doc. 27].

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24. Moreover, because Schaeffer has not made a substantial showing of the denial of a constitutional right and jurists of reason would not dispute the above conclusions, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b). A separate judgment will enter **DENYING** the motion [Doc. 1].

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE